In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2959

Vickie R. Chapman,

Plaintiff-Appellant,

v.

Howard Keltner, Yoshida Williams
and DuPage County, an Illinois municipal
corporation,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 6295--Joan B. Gottschall, Judge.

Argued January 26, 2001--Decided February 21,
2001

   Before Bauer, Manion, and Rovner, Circuit
Judges.

   Bauer, Circuit Judge.  On October 8,
1997, DuPage County Deputy Sheriffs
Howard Keltner and Yoshida Williams
arrested Vickie Chapman, who was dressed
in a fuchsia bathrobe and slippers,
pursuant to a warrant upon her discharge
from Good Samaritan Hospital in Downers
Grove, Illinois. Chapman had been
hospitalized for about five days,
recovering from bowel resection surgery,
which entailed making a nine-inch
incision across her lower abdomen and
pelvic area. Prior to her discharge, Dr.
Bruce Dillon gave her instructions.
During this conversation, Chapman asked
if she could take the two stairs leading
to the front door of her house. She says
that Dr. Dillon okayed it so long as she
took them "one at a time." Dr. Dillon
does not specifically recall giving
Chapman this instruction, but says that
he probably would have. The only
instruction written on the discharge
record, however, was "no heavy lifting."

Once inside the hospital, Keltner and Williams showed the nurse the arrest warrant. The nurse asked about the conditions at the jail infirmary, and called the infirmary nurse to inquire further. The nurse then told the officers that Chapman could be taken to jail without any problems. Chapman was arrested and handcuffed with her hands in front of her body. Keltner and Williams escorted her to a van, one of the types of vehicles authorized by the DuPage County Sheriff's Office, along with squad cars, to transport prisoners. As the van door was opened, Chapman refused to get in because her incision might rip open and said, "the step is too high, the doctor told me not to take stairs except one at a time." Keltner told her that she had to go to jail in the van. Chapman asked if she could slide into the van backwards and sit on the floor. Keltner said no because she had to sit in the seat. Keltner decided that he and Williams would assist Chapman into the van, with one on each side for support. As Chapman stepped up, the incision opened and began to bleed. During the drive to jail, Chapman cried and trembled, and although Keltner commented on her crying, Chapman did not reveal what had happened. Upon arriving at the jail, the officers similarly assisted her out of the van. Chapman was processed and attended court. Her husband posted the bond deposit. Chapman left jail with her husband and headed to the emergency room at Hinsdale Hospital. Her incision had separated one centimeter and, according to her expert, caused a hernia.

Chapman filed a three-count complaint. Count One, brought under 42 U.S.C. sec. 1983, claimed a Fourteenth Amendment violation in that the officers were deliberately indifferent to her serious medical needs. Count Two, also arising under sec. 1983, stated a Fourth Amendment violation in that the officers used excessive force during her arrest. Count Three stated, in pertinent part, a claim against the officers for willful and wanton conduct under Illinois law. Keltner and Williams moved for summary judgment, which was granted in their favor on all three counts. In so granting, the district court determined that Chapman's allegations were "not fully supported by the evidence obtained through discovery." Chapman appealed.

We review a grant of summary judgment de novo, construing all facts and drawing all reasonable inferences from the record in the light most favorable to the nonmovant. Summary judgment is proper when the record reveals no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The meat of Chapman's appeal is that by requiring her to step up into the van, which was more than twice as high as an ordinary stair, after she told the officers that the step was too high and that her doctor instructed her not to take stairs except one at a time, the officers (1) were deliberately indifferent to her serious medical needs by intentionally interfering with her prescribed treatment, (2) used excessive force during her arrest, and (3) were willful and wanton by showing a conscious disregard for or an utter indifference to her safety. We affirm the district court's decision as to each claim.

I. Count I: Fourteenth Amendment-- Deliberate Indifference

The Eighth Amendment protects prisoners from deliberate indifference to a serious injury or medical need. See Zentmyer v. Kendall County, 220 F.3d 805, 810 (7th Cir. 2000) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This protection is extended to arrested persons and pretrial detainees under the Due Process Clause of the Fourteenth Amendment. See id. To prevail the detainee must satisfy an objective and a subjective element, namely that: (1) an objectively serious injury or medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. See Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999). Under the first prong, an objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Zentmyer, 220 F.3d at 810 (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)). The parties do not dispute that Chapman's condition was serious. Under the second prong, it must be shown "that the

official was aware of the risk and consciously disregarded it nonetheless." Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 840-42 (1994)). Neither negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless. See Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991). Deliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed. See Estelle, 429 U.S. at 104-05.

Chapman relies on Martin v. Board of County Comm'rs, 909 F.2d 402 (10th Cir. 1990) to argue that the officers were deliberately indifferent by intentionally interfering with treatment prescribed by her doctor. Chapman contends that her doctor proscribed her from taking stairs, that she told the officers of this proscription, and that they interfered with it by assisting her in doing exactly what her doctor proscribed her from doing. There is no evidence, however, that the doctor totally prohibited Chapman from taking stairs. As the district court noted, the evidence suggests "at most, that her physician told her to avoid stairs in general, and to climb stairs one at a time." Indeed, Chapman's own deposition testimony is that the doctor told her that if she took stairs to take them "one at a time." Also, the written discharge record only forbade "heavy lifting," not stair climbing. The record, therefore, reflects that the doctor's "prescribed treatment" was not to avoid stairs altogether. Based on the record evidence, we cannot conclude that the officers deliberately disregarded the doctor's prescribed treatment for Chapman by assisting her in stepping into the van.

Further, even if the doctor had totally prohibited Chapman from stair climbing, there is no evidence that the officers were aware of this blanket ban. True, Chapman told the police of her doctor's orders when she said, "the step is too high, the doctor told me not to take the stairs except one at a time." However, this statement did not convey to the officers that she had to avoid steps

altogether. The district court correctly reasoned:

The difference between the allegations in Chapman's complaint and the actual evidence is critical on this point. If defendants were informed that a physician instructed Chapman not to climb any stairs, that is a far different matter than if they were informed that a physician told Chapman to take stairs one at a time. Requiring Chapman to climb into the van represents a clear disregard of the former, but only a potentially negligent interpretation of the latter. If defendants knew that Chapman was permitted to climb stairs under limited circumstances, they may have believed that assisting her into the van would be permissible under the physician's instructions.

The officers heeded the doctor's directive, precisely as Chapman told them, by requiring Chapman to take only one step. Chapman though makes much of the fact that the step into the van was twice the height of an ordinary stair, arguing that the officers disregarded her doctor's orders by making her essentially take two steps. This is of no matter since the officers heeded Chapman's protestation that the step was too high in assisting her into the van by support ing her weight on each side.

We agree with the district court that the officers requiring Chapman to step up so high, even with their assistance, may well constitute some form of negligence, but it does not constitute deliberate indifference. If the officers were aware that Chapman was prohibited from climbing all stairs, disregarded this and required her to step into the van, then perhaps the officers' conduct would constitute deliberate indifference. See Zentmyer, 220 F.3d at 812 ("If a defendant consciously chose to disregard a nurse or doctor's directions in the face of medical risks, then he may well have exhibited the necessary deliberate indifference."). However, this was not the case here because the officers did not consciously disregard the doctor's order.

The district court also found that the officers were not deliberately indifferent because there is no evidence

that the officers knew or reasonably should have known that Chapman's incision had opened. Chapman did not tell the officers and there was no evidence that the officers saw any blood. The court reasoned that the officers could have reasonably believed that her sobbing and shaking were "natural responses to being placed under arrest," and not a sign that she needed medical attention. On appeal Chapman does not raise the question of whether the officers were deliberately indifferent after her incision had opened; rather, she focuses solely on the officers requiring her to step into the van. Since her appellate brief does not argue that the officers' failure to get her medical attention violated the Fourteenth Amendment, we do not address the issue.

## II. Count II: Fourth Amendment--Excessive Force

The Fourth Amendment protects citizens against the use of excessive force during an arrest. See Graham v. Connor, 490 U.S. 386, 388 (1989). A seizure occurs if a government actor "'by means of physical force or show of authority, . . . in some way restrain[s] the liberty of a citizen.'" Id. at 395 n.10 (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). Whether excessive force was used is evaluated under the "objective reasonableness" standard, under which courts assess whether the actor's actions were objectively reasonable "'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Id. at 397. We agree that the officers did not use excessive force in arresting Chapman. As explained, Chapman told the officers that the doctor said she could only take stairs one at a time, and the officers did not contravene this order. Knowing just this information, it was reasonable for the officers to believe that assisting Chapman into the van would not violate the doctor's order. In light of the facts and circumstances, the officers were not objectively unreasonable when they required Chapman to step into the van and assisted her in doing so.

## III. Count III: Illinois Law--Willful and Wanton Conduct

Conduct is willful and wanton under

Illinois law if it constitutes "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Illinois recognizes that negligence and willful and wanton conduct are different, see Burke v. 12 Rothschild's Liquor Mart, Inc., 593 N.E.2d 522, 531 (Ill. 1992); Loitz v. Remington Arms Co., Inc., 563 N.E.2d 397, 402 (Ill. 1990), because "willful and wanton conduct carries a degree of opprobrium not found in merely negligent behavior . . . ." Burke, 593 N.E.2d at 532. Willful and wanton conduct "'approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it.'" Loitz, 593 N.E.2d at 402 (citation omitted). We have found that the standard for assessing whether conduct is willful and wonton is "remarkably similar" to the deliberateindifference standard. See Payne for Hicks v. Churchich, 161 F.3d 1030, 1041 n.13 (7th Cir. 1998). Given this similarity, summary judgment was proper under Count Three just as under Count One, and therefore, we AFFIRM the grant of summary judgment in favor of Keltner and Williams on all three counts.