William C. JOHNSON, Plaintiff–Appellant,

v.

Bill L. MYERS, et al., Defendants–Appellees.

No. 03–2313.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 2003.

Decided Aug. 11, 2004.

Terence B. Kelly, Thomson & Weintraub, Bloomington, IL, for Plaintiff–Appellant.

George J. Casson, O'Halloran, Kosoff, Geitner & Cook, Northbrook, IL, for Defendant–Appellee.

Before FLAUM, Chief Judge, BAUER, and ROVNER, Circuit Judges.

## ORDER

William C. Johnson brought suit under 42 U.S.C. § 1983 and Illinois law claiming that jailers in Woodford County, Illinois, were deliberately indifferent to a foot injury he suffered while confined at the county jail, and that the jailers and a private doctor hired by the county were negligent in treating the injury. Johnson also claimed that the sheriff and jail superintendent failed to properly train their employees and implement policies at the jail that would have prevented the violation of his constitutional rights. The district court dismissed the state-law negligence claim brought against the jailers in Johnson's first amended complaint. The court later granted summary judgment on the deliberate-indifference and wilful-and-wanton claims against the jailers in Johnson's fourth amended complaint, and declined to exercise supplemental jurisdiction over the surviving state malpractice claim against the doctor. Johnson challenges the dismissal of his negligence claim against the jailers and the grant of summary judgment on his remaining claims against the defendants. We affirm the district court's judgment.

## I.

Johnson's claims stem from an injury he suffered while incarcerated as a pretrial detainee from June 25 to July 19, 2000, at the Woodford County Jail. The chronology of the injury and the course of treatment are disputed, but on review of the grant of summary judgment, we take all facts and inferences in favor of Johnson as the nonmoving party. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir.2003). According to Johnson, on June 28, 2000, he tripped over a bar protruding from the floor at the threshold of his cell and fractured his right heel. After Johnson reported his injury to Deputies Gerry Hansen and Dennis Wertz, he received Tylenol, an ice bag, and later ice in a bucket. Johnson also requested to see a doctor.

Medical care at the jail was outsourced to Health Professionals, Ltd., a private

heath care organization. Pursuant to the contract with Health Professionals, Dr. Stephen Cullinan acted as the jail's medical director and visited there weekly with his nurse, Stella Munoz, to provide routine medical care to inmates. The deputies, however, all understood that they should call Dr. Cullinan if an inmate required immediate care or if they had a medical question. Deputies often called the doctor several times a day with questions. But the prison did not require deputies to track calls to Dr. Cullinan, nor was there a written policy about when to call Dr. Cullinan.

The deputies would also "pass on" information about an inmate's medical care to those on the next shift. Following Johnson's injury, Deputy Hansen wrote a memorandum about the incident and placed it in the other deputies' mailboxes. In the memorandum, Hansen reported Johnson's account of his injury and the provision of ice and Tylenol to Johnson but noted that he believed Johnson to be feigning injury due to "inconsistencies" in his complaints and version of events.

The day after reporting his injury to Deputies Hansen and Wertz, Johnson received medical care from Nurse Munoz. After consulting Dr. Cullinan, the nurse directed Johnson to elevate and apply ice to his foot and continue taking Tylenol. The deputies followed Munoz's orders to make ice and Tylenol available to him.

Two or three days later, Dr. Cullinan examined Johnson at the jail. Suspecting that Johnson's foot was fractured, Dr. Cullinan ordered x-rays. But the doctor rejected Johnson's requests for stronger pain medication, so the deputies continued to follow the doctor's orders to provide Johnson with Tylenol as needed.

The x-rays, performed several days later, revealed a fracture of Johnson's right calcaneous or heel bone. Dr. Cullinan then sent Johnson off-site to see an ortho-pedic specialist, Dr. George Lane. Dr. Lane placed Johnson's foot initially in a splint, not a cast, because the foot was swollen. He then arranged for Johnson to return a week later for a follow-up examination. Like Dr. Cullinan before him, Dr. Lane prescribed Tylenol and declined to give Johnson stronger pain medication.

After Johnson was returned to the jail following the first visit with Dr. Lane, the deputies adhered to the doctors' directions, administering Tylenol every four to six hours as needed. But Johnson continued to complain that he was in pain and criticized Dr. Lane's decision to place his foot in a splint rather than a cast. When Johnson saw Dr. Lane the following week, the doctor applied a non-weight-bearing cast on Johnson's foot. Dr. Lane then gave the deputies escorting Johnson a standard, preprinted form with directions about how to care for the cast. On this form Dr. Lane directed that Johnson's leg be kept elevated and that he be given Tylenol. The form also had typed at the bottom a directive to call Dr. Lane's office should there be any problem. Dr. Lane recorded in his notes that he expected to remove Johnson's cast in five weeks.

Following application of the cast, Johnson began complaining to the deputies on each shift that his pain had increased and that the cast was too tight. The deputies continued following Dr. Lane's instruction to give Johnson Tylenol but did not call him to report Johnson's complaints. Whether the deputies instead conferred with Dr. Cullinan is disputed. Jail Superintendent Michael Waterworth and Deputy Dan Myers testified by affidavit that they contacted Dr. Cullinan to report Johnson's complaints about his cast and were told to continue providing Johnson with Tylenol and elevating the leg. But when he was deposed, Dr. Cullinan could not recall these telephone calls and insisted that if

anyone from the jail had called, he would have referred them to Dr. Lane. Moreover, in Waterworth's and Myers's depositions, they equivocated about whether they had called Dr. Cullinan to relay Johnson's complaint that his cast was too tight. On summary judgment we must assume no doctor was called.

Six days after Dr. Lane applied the cast, says Johnson, the pain from his leg was so intense that he pleaded guilty to the charge on which he was being held so that he could be released after paying the imposed fine and receive adequate medical care outside of the county jail. An orthopedic doctor in his hometown determined that the tissue and bone in Johnson's foot had become infected. Johnson subsequently underwent three surgeries and finally an ankle fusion in March 2001. Even after these surgeries, Johnson has limited use of his right foot and walks with a limp. Johnson then brought state and federal claims in district court.

The district court dismissed the state-law negligence claim brought against the jailers in Johnson's first amended complaint after concluding that the Illinois Local Governmental and Governmental Employees Tort Immunity Act granted them immunity from negligence liability under 745 Ill. Comp. Stat. 10/4–105. Under that provision, a state employee is not liable "for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody" unless he "knows from his observation of conditions that the prisoner is in need of immediate medical care and, through wilful

and wanton conduct, fails to take reasonable action to summon medical care." 745 Ill. Comp. Stat. 10/4–105. Applying § 4–105 rather than 745 Ill. Comp. Stat. 10/6–106, which precludes immunity for the negligent *management* of medical treatment,[1] the court reasoned that § 4–105 addresses conduct of correctional officers and jailers whereas § 6–106 is applicable only to medical care providers. The court concluded that Johnson's allegations against the jailers fit within § 4–105 because he alleged that they had been negligent in obtaining, or failing to obtain, medical care. Johnson moved to amend the dismissal order to allow for an interlocutory appeal, which the court denied.

In Johnson's subsequent fourth amended complaint, he alleged three deliberate indifference claims against the jailers under § 1983, including specific claims against individual deputies for their alleged conduct and Sheriff Bill L. Myers and Superintendent Waterworth in their individual and official capacities for allegedly failing to implement policies and train their employees concerning inmate medical care. Johnson also included a state-law claim against the jailers for wilful and wanton conduct as allowed under § 4–105, state medical-malpractice claims against Dr. Cullinan and Health Professionals, and a malpractice claim against Dr. Lane that he voluntarily dismissed. The district court granted summary judgment on Johnson's deliberate-indifference claims because the court concluded that the jailers did not know of a risk of serious injury to

---

1. Section 6–106(c) states that "Nothing in this section exonerates a public employee who has undertaken to prescribe for mental or physical illness or addiction from liability for injury proximately caused by his negligence or by his wrongful act in so prescribing or exonerates a local public entity whose employee, while acting in the scope of his employment, so causes such an injury." Section 6–106(d) reads "Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in administering any treatment prescribed for mental or physical illness or addiction or exonerates a local public entity whose employee, while acting in the scope of his employment, so causes such an injury."

Johnson. When framing the issue, the district court asked whether Johnson could establish that the defendants knew of and disregarded Johnson's infection. In concluding that the defendants had not known of this risk, the court relied on the evidence supporting the defendants' contention that Superintendent Waterworth and Deputy Wertz called Dr. Cullinan after Johnson complained of increased pain due to the cast. And having concluded that Johnson lacked evidence that the defendants had knowingly disregarded the risk of infection, the court also determined that his related federal claim concerning jail policies and training, as well as his state wilful-and-wanton claim, necessarily failed. The court then declined to extend its exercise of supplemental jurisdiction to Johnson's remaining state medical-malpractice claim against Dr. Cullinan and Health Professionals.

## II.

We turn first to the district court's dismissal of Johnson's state-law negligence claim against the jailers. Johnson alleged in his first amended complaint that the jailers negligently managed and cared for his injury by ignoring his complaints and need for medical attention, failing to obtain timely medical care for him when circumstances required such care, failing to inform the medical staff of his ongoing complaints, and failing to make notes of his condition and complaints and provide that information to the medical staff. Based on the nature of these allegations, Johnson contends that the district court applied the incorrect section of the tort immunity act when it concluded that the jailers were immune from negligence.

After the district court dismissed this claim, Johnson omitted it from his fourth—and final—amended complaint, and normally an amended complaint supercedes the original complaint, rendering it void. *Flannery v. Recording Indus. Assoc. of*

*Am.*, 354 F.3d 632, 638 n. 1 (7th Cir.2004). Thus it might appear that Johnson abandoned the claim and, with it, any argument about the dismissal. But several circuits have held that a party does not have to formalistically replead a dismissed claim in an amended complaint where he has preserved his objection to the dismissal. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572–73 (4th Cir.2001); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir.2000); *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 n. 5 (11th Cir. 1999); *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517–18 (10th Cir.1991); *but see London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir.1981). We have yet to decide the question, but the defendants do not argue that Johnson abandoned his claim, so we will address the merits without deciding the procedural question.

The district court reasoned that § 4–105 protected the jailers from liability for any lack of due care in failing to obtain or furbish medical care. *See* 745 Ill. Comp. Stat. 10/4–105. But, according to Johnson, his allegations—essentially that the defendants failed to alert doctors to Johnson's complaints and obtain medical care for Johnson—addressed the deputies' negligent *management* of his medical treatment, which is excepted under § 6–106 from immunity. *See* 745 Ill. Comp. Stat. 10/6–106 (c), (d); *Mich. Ave. Nat'l Bank v. County of Cook*, 191 Ill.2d 493, 247 Ill.Dec. 473, 732 N.E.2d 528, 539 (Ill.2000). Johnson also challenges the district court's conclusion that only § 4–105, and not § 6–106 as well, applies to claims involving negligent medical care by jail employees. We do not have to address this second point, however, because we conclude that the district court correctly characterized Johnson's allegations as relating to the obtaining and furnishing of medical care, which is squarely covered by § 4–105's immunity provision. *See Mich. Ave. Nat'l Bank*, 247

Ill.Dec. 473, 732 N.E.2d at 535 (where statutory language is unambiguous, we give effect to its plain meaning without further resort to methods of statutory construction).

We next turn to the grant of summary judgment, starting with Johnson's deliberate-indifference claims. Because Johnson was a pretrial detainee, his claims arise under the Due Process Clause of the 14th Amendment rather than under the 8th Amendment, *Chapman v. Keltner,* 241 F.3d 842, 845 (7th Cir.2001), but the deliberate-indifference standard developed in 8th Amendment cases nonetheless applies, *Zentmyer v. Kendall County,* 220 F.3d 805, 810 (7th Cir.2000). To prevail on a deliberate-indifference claim, a plaintiff must satisfy a two-part test. First, the medical condition at issue must be objectively serious. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir.2000). Second, the defendants must have acted with deliberate indifference. *Farmer,* 511 U.S. at 838. Regardless whether the defendants intended harm, to be liable they need only have known of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk. *Id.* at 838; *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) But negligence, even gross negligence, does not rise to deliberate indifference. *Matos ex. rel. Matos v. O'Sullivan,* 335 F.3d 553, 557 (7th Cir.2003); *Walker,* 293 F.3d at 1037. On summary judgment, the jailers focused solely on the question of subjective knowledge, conceding that Johnson's injury was sufficiently serious. In addition, counsel for Johnson conceded during oral argument that his deliberate indifference claims were confined to the period following the application of the cast to Johnson's ankle.

As Johnson correctly argues, the district court's analysis of his deliberate-indifference claim against the jailers contains two errors. First, Johnson challenges the district court's reliance on affidavit testimony from Superintendent Waterworth and Deputy Wertz that they had called Dr. Cullinan following the casting of his ankle to conclude that jail staff procured proper medical care for Johnson. Johnson correctly points out that the proper inference on summary judgment is that neither Waterworth or Wertz called Dr. Cullinan; both men attested in affidavits to calling Dr. Cullinan but both also equivocated on the issue when deposed, and there is no record of any calls to the doctor. Further, Dr. Cullinan declared in his deposition that he would have called Dr. Lane had anyone from the jail contacted him. And since it is undisputed that no one contacted Dr. Lane, the inference favorable to Johnson is that no one called Dr. Cullinan either, and so the district court's contrary conclusion was erroneous. Second, Johnson contends that the district court, in concluding that the jailers were not aware of the substantial risk of harm, erroneously defined that risk too narrowly. The district court focused on whether these defendants had actual knowledge of the risk of infection rather than asking more broadly whether they knew that, after Johnson's foot was put in a cast, the pain of which he complained was still sufficiently serious as to require further medical care. Again Johnson is correct; it is enough for Johnson to establish that the defendants knew of a risk of further injury to Johnson's foot, and not specifically the risk that his foot was infected. *See Haley v. Gross,* 86 F.3d 630, 643 n. 33 (7th Cir.1996) (although there must be link between risk of which defendant is aware and actual harm that occurred, defendant need not know of "precise risk that unfolds").

We may affirm on any basis found in the record, however, *Ochana v. Flores,* 347 F.3d 266, 269–70 (7th Cir.2003), and Johnson failed to establish that any jail employee in fact knew of but disregarded the risk of serious injury following his treatment by Dr. Lane. Johnson insists that a jury reasonably could infer deliberate indifference from the failure to contact either Dr. Cullinan or Dr. Lane despite Johnson's complaints of increased pain and Dr. Lane's instruction to call him about any problems. Johnson assumes that, as a matter of "common sense," the defendants would have known that medical attention is required if a person experiences increased pain following the application of a cast to a "swollen fractured ankle." But Johnson assumes too much about the defendants' medical knowledge. Johnson produced no evidence from which a jury could reasonably conclude that the jailers understood his complaints to signal a serious medical problem. The jailers were laypersons who, from the very beginning, adhered to the specific instructions of Nurse Munoz, Dr. Cullinan, and Dr. Lane, such as providing Johnson with ice and Tylenol and elevating his foot. *See Chapman,* 241 F.3d at 846. After the cast was in place, the defendants continued to follow Dr. Lane's specific instructions, giving him regular doses of Tylenol and keeping his leg elevated. As laypersons, they might have reasonably assumed that complaints of tightness and associated pain are typical consequences of having a broken bone placed in a cast. *Cf. Delaney v. DeTella,* 256 F.3d 679, 685 (7th Cir.2001) (knowledge might be inferred from prior exposure to information concerning risk); *Collignon v. Milwaukee County,* 163 F.3d 982, 989 (7th Cir.1998) (in assessing whether defendant knew of and disregarded serious medical need for inadequate medical care claim, courts "can assume what might not be obvious to a lay person might be obvious to a professional acting within her area of expertise"). There is no evidence that they knew of and disregarded a serious risk of injury to Johnson.

Further, the totality of Johnson's medical care establishes that any failure to contact the doctors did not rise to a knowing disregard of a serious risk to Johnson. *See Walker v. Peters,* 233 F.3d 494, 501 (7th Cir.2000). Despite Deputy Hansen's initial doubts about Johnson's complaints of pain, the defendants arranged for Johnson to see a nurse the day after his injury. Once Johnson obtained initial medical care from the nurse, the defendants arranged for subsequent medical visits in accordance with the doctors' orders. And Johnson's reports of increased pain' were not sufficient to establish that those complaints in fact alerted jailers to his need for further medical attention. Johnson consistently had reported steadily increasing amounts of pain throughout the two and a half weeks following his injury, yet jailers knew that Dr. Cullinan and Dr. Lane continued to deny his requests for stronger pain medication. *See Mathis v. Fairman,* 120 F.3d 88, 92 (7th Cir.1997) (despite inmate's odd behavior, no evidence that behavior changed in way that would alert jail staff to harm he might cause himself). Even if, as we assume, the defendants subsequently failed to alert Dr. Cullinan or Dr. Lane to Johnson's complaints of increased pain, this is negligence at most, not deliberate indifference. *See Matos,* 335 F.3d at 557.

Without adequate evidence of deliberate indifference by the jailers, Johnson's state wilful-and-wanton claim necessarily fails as well; the Illinois wilful-and-wanton standard is "remarkably similar to the deliberate indifference standard," requiring that the defendant act with intent, deliberate disregard, or indifference to a known risk of harm to another. *Chapman,* 241 F.3d at 847 (internal citations and quotations omitted); *see Burke v. 12 Rothschild's Li-*

*quor Mart, Inc.,* 148 Ill.2d 429, 170 Ill.Dec. 633, 593 N.E.2d 522, 532 (Ill.1992). Finally, because Johnson suffered no underlying constitutional violation from which a jury could indirectly infer that the jail's policies were unconstitutional, and he did not present sufficient evidence to establish that the policies themselves were constitutionally inadequate, his claims challenging the jail's policies and lack of training fail as well. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam); *Durkin v. City of Chicago,* 341 F.3d 606, 615 (7th Cir.2003).

AFFIRMED.