In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-1875

JILL OTIS,

*Plaintiff-Appellant*,

*v.*

KAYLA J. DEMARASSE, et al.,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:16-cv-00285-WCG — **William C. Griesbach**, *Chief Judge*.

———————————

ARGUED JUNE 7, 2017 — DECIDED APRIL 2, 2018

———————————

Before RIPPLE, ROVNER, and HAMILTON, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Jill Otis brought this action pro se under 42 U.S.C. § 1983, alleging that Kayla Demarasse, a Waterford, Wisconsin police officer, ignored her obvious need for medical care after arresting her on suspicion of driving while intoxicated. The district court dismissed her complaint. Ms. Otis, now represented by counsel, appeals the dismissal. She contends that her complaint states a claim for relief and

that the district court erred when it concluded that she had pleaded herself out of court.

Ms. Otis's submissions in the district court fairly allege that Officer Demarasse knew about her need for medical attention and responded in an objectively unreasonable manner. The district court erred in concluding that Ms. Otis had pleaded herself out of court by attaching the police report, which contained a version of the facts different from those in the complaint itself. Accordingly, we vacate the judgment as to Officer Demarasse and remand for further proceedings against the officer.

# I

## BACKGROUND

The initial version of Ms. Otis's complaint is brief. It alleges that on September 17, 2014, the Waterford police stopped her on suspicion of driving while intoxicated, lied about the stop in written reports, and treated her in a manner "unjustified" by her "health and civil rights."[1] Ms. Otis named as defendants the "Waterford Police Dept." and "Racine County Human Services."[2] The district court screened the complaint and dismissed it on the ground that it failed to state a claim.[3] The court reasoned that the complaint lacked factual detail about the traffic stop, including the identity of

---

[1] R.1 at 2.

[2] *Id.* at 1. Officer Demarasse's name was included on a line labeled "Employer's name and address, if known." *Id.* at 2.

[3] *See* 28 U.S.C. § 1915(e)(2); *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999).

the arresting officer.[4] Moreover, the court believed that the
Waterford Police Department was not "a suable entity" and
that Ms. Otis's complaint did not allege a viable claim against
the Racine County Department of Human Services.[5] The court
gave Ms. Otis thirty days to amend her complaint to cure
these perceived defects.

Ms. Otis's amended complaint added Officer Demarasse
as a defendant. It repeated her allegation that the written po-
lice reports include false statements, and she recounted the
events surrounding her arrest. Officer Demarasse stopped
her at 1:20 a.m., she recalled, while she was driving with her
son, then eleven, to her mother's house in Illinois. Officer De-
marasse noticed the boy in the back seat, asked Ms. Otis
where she was going, and then ordered her out of the car.
Ms. Otis alerted the officer that she was "very sick and bleed-
ing" heavily and asked to be taken to a hospital.[6] Officer De-
marasse refused and proceeded to administer a field sobriety
test, which, Ms. Otis alleges, she had difficulty completing be-
cause blood was "running down" her clothes and legs.[7]
Ms. Otis felt she was "about to pass out" and, for the second
time, asked to be taken to a hospital.[8] Once again, Officer De-
marasse refused. Instead, she arrested Ms. Otis, cuffed her

---

[4] The court apparently did not notice that Ms. Otis's complaint had iden-
tified Officer Demarasse. *See supra* note 2.

[5] R.4 at 2.

[6] R.5 at 6.

[7] *Id.*

[8] *Id.* at 7.

hands, and drove her to the police station. By then Officer De-marasse had been joined by a second police officer, who took the boy to a Department of Human Services caseworker.

At the police station, the amended complaint continues, Ms. Otis was subjected to additional testing to determine whether she was under the influence of drugs. A "drug recog-nition expert" examined Ms. Otis's eyes, nose, and mouth, while a medical technician also drew a blood sample.[9] Of-ficer Demarasse then drove Ms. Otis to the Racine County jail, where she was booked and held for another twelve hours. At no time during this encounter, according to the amended complaint, was Ms. Otis taken to a hospital. Her blood sample was negative for alcohol and controlled substances. Authori-ties eventually dropped the charge of operating a motor vehi-cle while intoxicated.

The district court also screened this amended complaint. This time the court authorized Ms. Otis to proceed against Of-ficer Demarasse on a claim that the officer had denied her due process by deliberately ignoring a serious medical need. The right to due process, the court reasoned, protects "arrested persons and pretrial detainees" from deliberate indifference to serious medical needs.[10] The court acknowledged its obli-gation at the pleading stage to credit Ms. Otis's allegation that she was not taken to a hospital after her arrest, but it encour-aged Officer Demarasse to move for summary judgment if she could produce contrary evidence on this question. The court also dismissed as defendants the police department and the Department of Human Services. The court reasoned that

---

[9] *Id.* at 8.

[10] R.7 at 5 (quoting *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001)).

the correct defendants would be the city and county, and neither was named in Ms. Otis's submissions.

At that point the litigation should have proceeded, but Ms. Otis inexplicably sent the district court another supplement to her complaint plus more than a hundred pages of attachments, mostly police reports and medical records. In a brief, handwritten transmittal letter, she explained her wish "to submit[] the paperwork to add the City and County" as defendants "because they play a great part in this case."[11] Her submission is titled as a "Second Amended" complaint, and that document identifies the defendants as "Waterford City and County."[12] Officer Demarasse's name is omitted.

One of the attachments is Officer Demarasse's police report, recounting that she stopped Ms. Otis on a rural highway in Racine County after watching her car veer off the pavement while traveling 25 miles per hour in a 55-mile-per-hour zone. By Officer Demarasse's account, Ms. Otis acted erratically during the encounter and her pupils were constricted. Although the officer did not smell alcohol or any controlled substance, she asked Ms. Otis to perform a field sobriety test. When Ms. Otis climbed out of her car, Officer Demarasse did notice blood on her shirt near her buttocks, prompting the officer to ask about the blood. According to the officer's report, Ms. Otis attributed the blood to having her period. Officer Demarasse then asked, her report continues, why Ms. Otis was not wearing a pad or tampon, and Ms. Otis

[11] R.9-1 at 1.

[12] R.9 at 1.

simply replied, "Because."[13] Ms. Otis then began the field sobriety test but refused to complete it, citing a back injury. Suspecting that Ms. Otis had taken illegal drugs or prescription medication, Officer Demarasse arrested her and put her in the back seat of a squad car (after placing two gauze pads on the seat).

Officer Demarasse's report contradicts Ms. Otis's allegations concerning medical treatment. First, it recounts driving Ms. Otis to Burlington Memorial Hospital "for OWI processing."[14] At the hospital, the report says, Officer Demarasse issued Ms. Otis a citation for driving while intoxicated and obtained her agreement to submit to a blood test. A medical technician drew two vials of blood, and another officer conducted "drug recognition exams."[15] During this time, according to the police report, Ms. Otis was given a chance to clean herself and exchange her blood-soaked pants for scrub pants supplied by the hospital. Because Ms. Otis had no one available to give her a ride home, Officer Demarasse transported her to the county jail at 5:00 a.m. for a "12-hour OWI hold."[16]

Ms. Otis later requested from Burlington Memorial Hospital any record of her being treated the day of her arrest, and the hospital did not have any relevant record. Records from a

---

[13] R.9-2 at 13.

[14] *Id.* at 14.

[15] The medical technician completed a State of Wisconsin "blood/urine analysis" form, writing that blood for an alcohol and drug panel was collected at 3:00 a.m. The form does not identify where—the police station or a hospital—Ms. Otis's blood was drawn. *Id.* at 21.

[16] *Id.* at 15.

different hospital establish that, two days *after* her arrest, Ms. Otis was admitted and assigned to intensive care. She was diagnosed with "[a]cute blood loss anemia secondary to dysfunctional uterine bleeding," which required giving her a blood transfusion.[17]

After receiving Ms. Otis's unsolicited third submission, the district court dismissed her action and struck the filing. Instead of acknowledging this submission as a supplement to what Ms. Otis had filed previously, the court characterized it as a standalone "second amended complaint" that *superseded* the initial version as amended.[18] The court then reasoned that, because Officer Demarasse is not explicitly named as a defendant in the caption, Ms. Otis had dropped the officer as a defendant. The court further concluded that Ms. Otis's complaint did not state a claim against Waterford or Racine County. The court noted that a municipality may be liable under § 1983 if a constitutional violation arises from an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Yet, the district court explained, Ms. Otis did not attribute her arrest or its aftermath—including the temporary placement of her son with the Department of Human Services—to a city or county policy or custom. In any event, the court asserted, Ms. Otis's allegations are "no longer plausible" in light of the documents attached to her latest submission.[19] Ms. Otis did not deny any of the information in the attachments, the court said, and those attachments confirm that

---

[17] *Id.* at 70.

[18] R.10 at 1.

[19] *Id.* at 2.

she "had her blood drawn, was examined by hospital staff, and was given clean scrubs to wear."[20] For this reason, the court concluded, Ms. Otis cannot plausibly allege that she was not taken to the hospital after her arrest or that her civil rights were violated during the episode.

## II

## DISCUSSION

Ms. Otis now challenges only the dismissal of her claim against Officer Demarasse. She does not contest the dismissal of her *Monell* claims against either Waterford or Racine County. We review de novo a dismissal at screening under 28 U.S.C. § 1915(e)(2)(B), and we accept allegations in a complaint as true, "viewing them in the light most favorable to the plaintiff." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013) (internal quotation marks omitted).

### A.

Before addressing the merits, we must first determine whether this appeal, which only raises challenges to the claim against Officer Demarasse, is properly before us. Officer Demarasse contends that the district court correctly determined that Ms. Otis's third submission, which contained no allegations against Officer Demarasse, superseded Ms. Otis's second submission, effectively waiving any claims against the officer. In support of this contention, Officer Demarasse notes that "the District Court's local rules do not allow parties to

---

[20] *Id.* at 3.

supplement complaints and, even if she could have supplemented her complaint under the local rules, she failed to do so effectively where she did not specifically and clearly adopt her first amended complaint by reference."[21] We cannot accept this view.

The Supreme Court has cautioned that any "document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). We therefore have long recognized that pro se litigants must be afforded "leniency … on procedural matters." *Lovelace v. Dall*, 820 F.2d 223, 228 (7th Cir. 1987).

Here, Ms. Otis filed an amended complaint on March 15, 2016, naming among others Kayla J. Demarasse as a defendant.[22] The district court, in an order dated March 24, 2016, then held "that the plaintiff has stated a Due Process claim against defendant Demarasse," further noting that the "City and County are … proper parties but neither are named in the amended complaint."[23] On April 4, 2016, Ms. Otis filed a second amended complaint, naming "Waterford City and County" as defendants, but omitting Demarasse.[24] Appended to that complaint was a letter indicating Ms. Otis's desire "*to add* the City and County because they play a great part in this case."[25] Ms. Otis's clear intention, prompted by statements in a prior order of the district court, was to amend the complaint

---

[21] Appellee's Br. 10.

[22] R.5 at 1.

[23] R.7 at 6.

[24] R.9 at 1.

[25] R.9-1 (emphasis added).

to include additional parties. In light of the Supreme Court's direction to construe liberally pro se filings, Ms. Otis's submission should not have been characterized as a superseding complaint. It should have been accepted for what it was—a pro se litigant's attempt to add parties and incorporate the first amended complaint's allegations by implicit reference.

### B.

We next address whether the complaint, as amended, states a claim upon which relief could be granted. Ms. Otis contends that her complaint as initially amended states a claim arising under the Due Process Clause of the Fourteenth Amendment, because she asserts that Officer Demarasse was deliberately indifferent to an objectively serious medical need.[26] Ms. Otis points to her allegations that Officer Demarasse knew about but failed to provide medical attention for her profuse bleeding, which presented a serious medical need. Similar allegations from other pro se litigants, she maintains, have been deemed by this court sufficient to state a claim for deliberate indifference. *See, e.g., Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015) (concluding that pro se litigant stated claim for deliberate indifference against prison nurse who knew of severe injury but failed to provide medical treatment or seek help from others).

---

[26] *See Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015) (recognizing that, although the right to due process, not the Eighth Amendment, governs a claim that pretrial detainee was denied medical care, the same deliberate indifference standard applicable to convicted prisoners also applies to pretrial detainees).

The parties and the district court assumed that Ms. Otis's claim is governed by the Fourteenth Amendment. The district court viewed Ms. Otis's claim through the lens of *Chapman v. Keltner*, 241 F.3d 842 (7th Cir. 2001). In that decision, we relied on the right to due process and its "deliberate indifference" standard in analyzing the claims of a plaintiff who was arrested on a warrant. *Id.* at 844–45. We have said, however, that the deliberate indifference standard applies only to persons who have received a judicial determination of probable cause, not to persons arrested without a warrant and waiting to be taken to a judge. *See Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011); *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007); *Lopez v. City of Chicago*, 464 F.3d 711, 718–19 (7th Cir. 2006).[27] Ms. Otis was arrested without a warrant, and she had not appeared before a judicial officer for a determination of probable cause for that arrest. Under our cases, therefore, her claim is controlled not by the Fourteenth Amendment but the Fourth. *See Hill v. Murphy*, 785 F.3d 242, 244 (7th Cir. 2015); *Currie v. Chhabra*, 728 F.3d 626, 629–30 (7th Cir. 2013); *Lopez*, 464 F.3d at 719.[28]

---

[27] The parties have not argued that our pre/post-legal-process distinction to determine the applicability of the Fourth or Fourteenth Amendment is no longer viable after *Manuel v. City of Joliet*, 137 S. Ct. 911, 917–19 (2017). Therefore, we pretermit any reliance on that case to justify predicating our analysis on the Fourth Amendment. In any event, on the facts alleged here, it is clear that the lack of attention to Ms. Otis's medical needs, if established at trial, would be violative of the more stringent Fourteenth Amendment standards.

[28] Indeed, in this case, the alleged actions of Officer Demarasse might be characterized as part and parcel of the initial seizure. According to the allegations, the officer seized Ms. Otis in a manner compatible with a seizure

Under the Fourth Amendment, Ms. Otis must show only that Officer Demarasse's conduct was "objectively unreasonable under the circumstances." *Williams*, 509 F.3d at 403 (quoting *Lopez*, 464 F.3d at 720); *see also Ortiz*, 656 F.3d at 530. Ms. Otis's complaint as initially amended sufficiently alleges that Officer Demarasse acted unreasonably in denying her medical care for her profuse uterine bleeding. Officer Demarasse was aware of the bleeding, Ms. Otis asserts, because she repeatedly told the officer that she was bleeding and needed to be taken to a hospital. Indeed, Officer Demarasse's police report establishes that she was aware of the bleeding—she noted in her report that Ms. Otis had "a large fresh blood stain" at the bottom of her shirt.[29] And Ms. Otis's medical condition, as described to the officer, unquestionably was objectively serious: Ms. Otis told the officer that she was "bleeding bad[ly]" and felt "very sick," to the point that she feared she might pass out.[30] Even without hearing these statements, moreover, Officer Demarasse would have known from the amount of blood visible on Ms. Otis's clothes and legs that immediate medical attention was needed.

Officer Demarasse did not seek medical care, however, for Ms. Otis's severe bleeding. As Ms. Otis recounts, she twice asked the officer to take her to the hospital, but each time Officer Demarasse refused. Instead, the officer took her to jail, where she stayed for another twelve hours without medical attention. These allegations are troubling, especially because

---

for serious drug or alcohol abuse without any regard for the obvious evidence that her condition and actions revealed a serious medical condition.

[29] R.9-2 at 13.

[30] R.5 at 6.

Ms. Otis could not independently seek medical care while in custody. At this pleading stage, Ms. Otis alleges enough to piece together a plausible story that Officer Demarasse acted unreasonably in denying her medical care for an obviously serious medical condition.

## C.

Finally, we turn to the district court's conclusion that Ms. Otis had pleaded herself out of court by attaching various documents to her final amended complaint. Among the attached documents was Officer Demarasse's police report, which contradicts the allegations of the complaint in material respects. The court concluded, after reviewing these documents, that Ms. Otis's allegations were "no longer plausible and will be dismissed as frivolous."[31] The court specifically noted that "[n]one of the information in the exhibits attached to Otis' amended pleading are denied by her" and that, in addition to contradicting some of the allegations, they also "provide[d] a more complete context in which to assess her allegations."[32]

"A plaintiff does not, simply by attaching documents to his complaint, make them a part of the complaint and therefore a basis for finding that he has pleaded himself out of court." *Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007); *see also Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004) (rejecting argument that prisoner, simply by appending to complaint a decision of an administrative board, adopted board's factual

---

[31] R.10 at 2.

[32] *Id.* at 3.

assertions); *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) (noting that "[w]hen the exhibit[ in question] is not the subject of the claim," the rules do "not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached").[33] Indeed, in assessing the propriety of dismissal of a complaint, our cases urge particular caution when a plaintiff attaches a document authored by a defendant: "Rather than accepting [as true] every word in a unilateral writing by a defendant and attached by a plaintiff to a complaint … , it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the

---

[33] Certain "written instrument[s]" become a part of the complaint by rule. *See* Fed. R. Civ. P. 10(c). As we recently have explained,

> The traditional understanding of an instrument is a document that defines a party's rights, obligations, entitlements, or liabilities—a contract, for example. BLACK'S LAW DICTIONARY 869 (9th ed. 2009). Most of the documents that Williamson has appended to her complaint do not fit within that narrow understanding … of a written instrument. But we have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.

*Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Although we considered the documents attached to the complaint in *Williamson*, we noted that it was appropriate to do so where the plaintiff had relied on the documents in substance and made no allegation that they were fraudulent or false in any way. *Id.*

reliability of the documents." *Id.* A district court should determine whether considering the particular documents in substance is appropriate. *See, e.g., Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("What makes it appropriate for us to consider the documents that Williamson has attached to her complaint is that she has not only cited them in the body of her complaint, but she has, to some degree, relied on their contents as support for her claims.").

Here the district court did not employ the requisite caution. Instead, it simply assumed that, because "the information in the exhibits" was not "denied by her," Ms. Otis had adopted everything written by Officer Demarasse in her police report.[34] Plainly that is not so; when Ms. Otis amended her complaint initially, she five times challenged Officer Demarasse's report as "false" or "lies."[35] *Cf. Williamson*, 714 F.3d at 436 (explaining that content of investigative reports attached to complaint could be treated as part of plaintiff's factual allegations absent "any indication" from plaintiff that documents were "falsified in some way"). The district court therefore erred when it credited the content of the police report over Ms. Otis's denial that her blood was drawn at a hospital and over Burlington Memorial's records reflecting that she was not treated on the night in question.

More fundamentally, Ms. Otis's claim does not depend on whether her blood was drawn at a hospital or at the police station. Wherever Ms. Otis was taken, she was *not* taken for the purpose of receiving medical care, and she did not receive medical care. At most, during the nearly four hours that

---

[34] R.10 at 3.

[35] R.5 at 7–9, 11.

Ms. Otis was in Officer Demarasse's custody, the only step taken by the officer in response to seeing the plaintiff bleeding heavily was to find her a pair of scrub pants to wear. We do not understand how it would help the officer's case to prove that she *did* take Ms. Otis to a hospital yet still refused to notify hospital staff that the woman she had brought in handcuffs was bleeding heavily and saying she was close to passing out.

## Conclusion

For these reasons, we vacate the dismissal of Ms. Otis's claim against Officer Demarasse, and we remand the case for further proceedings consistent with this opinion. In all other respects, the judgment of the district court is affirmed.

AFFIRMED