In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3591

DEREK J. BURTON,

*Plaintiff-Appellee,*

*v.*

MICHAEL DOWNEY, *et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:11-CV-03171 — **Sue E. Myerscough**, *Judge.*

ARGUED SEPTEMBER 17, 2015 — DECIDED OCTOBER 8, 2015

Before FLAUM, MANION, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge*. Plaintiff-appellee Derek J. Burton filed a civil rights action under 42 U.S.C. § 1983, alleging that members of the staff at the Jerome Combs Detention Center ("JCDC") violated his constitutional rights while he was detained for eighteen months awaiting trial. The district court denied defendants' motion for summary judgment, ruling that a reasonable jury could conclude that defendants were deliberately indifferent to Burton's serious medical needs—

the standard to prove a constitutional violation under the Due Process Clause of the Fourteenth Amendment. Because it found that triable issues of fact existed as to whether defendants' conduct violated Burton's constitutional rights, the district court also rejected defendants' defense of qualified immunity. Defendants appeal, and for the reasons that follow, we reverse the district court's decision denying summary judgment.

## I. Background

Burton was detained at the JCDC from September 23, 2009 to March 17, 2011, while he awaited trial and sentencing for charges of home repair fraud, false impersonation of a firefighter, and driving on a revoked license. Before his detention, Burton had been treated by Dr. Zumwalt, a primary care physician, for numerous health issues, including chronic back pain, chronic anxiety, acid reflux, herpes simplex, hyperlipidemia, and depression. In addition to other medications, Dr. Zumwalt intermittently prescribed Norco, an opioid pain medication similar to Vicodin, to help Burton manage pain associated with these conditions.

In 2008, Dr. Zumwalt diagnosed Burton with avascular necrosis, which is a loss of blood circulation that causes bone death, in Burton's hip. He prescribed Norco for the pain and recommended that Burton speak to Dr. Verghese, an orthopedic surgeon, for treatment options.

One week before Burton's detention, Dr. Verghese performed a core decompression surgery to treat Burton's avascular necrosis and prescribed Ultram, a synthetic opiate also known as Tramadol, as a pain reliever. In his deposition, Dr. Verghese explained that he did not like to prescribe narcotic

pain medication such as Norco and preferred Ultram for pain relief because it has less addictive potential. At that time, Dr. Verghese did not know that Burton was also taking Norco.

On the day of Burton's surgery, Dr. Zumwalt refilled Burton's Norco prescription without consulting Dr. Verghese. Dr. Zumwalt stated in his deposition that he did not intend for Burton to be taking Norco for long, and that the prescription should have run out on September 29, 2009. Although Dr. Zumwalt conceded that Norco is addictive, he testified that the dose prescribed to Burton would not be addictive if taken over several weeks, and that it could have been stopped or interrupted without causing serious withdrawal symptoms or health issues.

On September 23, 2009, Burton was arrested and booked into the JCDC. Burton had taken a Vicodin pill about an hour before his arrest. At the time of his detention, all of Burton's prescribed medications, including Lexapro for depression, Xanax for anxiety, Zantac for acid reflux, two types of prescription cream for herples simplex, and Norco, were confiscated pursuant to JCDC policies and procedures.

Approximately thirty-five hours later, Physician's Assistant Timothy Menard examined Burton. Burton claims that during his examination, he informed Menard that he was experiencing severe pain as well as withdrawal symptoms because he had been taking Norco for the past year, and requested that Menard contact Dr. Zumwalt. Menard contacted Dr. Verghese about Burton's surgery and health issues, but did not call Dr. Zumwalt or prescribe Norco. Menard instead prescribed Ultram, Xanax, Zantac, and cholesterol-lowering medication. Burton was allowed to take the Zantac

and cholesterol medicine back to his cell to self-dispense, but the Ultram and Xanax were dispensed by the JCDC staff.

The parties dispute how quickly Burton received Ultram after this examination. Burton contends that he did not receive pain medication until October 1, nine days after he was detained. He did not raise this argument in his complaint—it first appears in his response to defendants' motion for summary judgment, which was filed on November 13, 2013. The only evidence to support his claim is a document from Riverview Pharmacy showing that an Ultram prescription was filled on October 1.

Burton's deposition taken in January 2012 tells a different story. In that deposition, Burton made several statements indicating that he began taking Ultram on September 25, meaning that he was only deprived of pain relief for approximately thirty-five to forty-eight hours from the start of his detention. Specifically, Burton acknowledged that Nurse Heather Gill ordered his prescription for Ultram on September 25 and that he received Ultram after Menard's September 25 examination. Burton also admitted that when he met with Dr. Verghese on September 29, less than a week after his detention, he told Dr. Verghese that he was taking Ultram. Burton's statements are consistent with JCDC medical records that show that Ultram was dispensed on September 25.

On September 29, 2009, less than a week after he was detained, Burton saw Dr. Verghese for a follow-up appointment and complained that he was experiencing severe post-surgical pain. After conducting a physical examination and reviewing his X-rays, Dr. Verghese refilled Burton's prescription for Ultram for seven to ten days and instructed that he

use Tylenol after his Ultram prescription ran out. As before, Dr. Verghese did not prescribe Norco.

Dr. Verghese saw Burton again on October 27, 2009. Dr. Verghese stated in his deposition that at this time, Burton appeared to be recovering well. Dr. Verghese once again refused to prescribe narcotics, despite Burton's continued requests. He instead advised that Burton continue to take Tylenol for pain relief and begin weaning off of his crutches.

On November 17, 2009, in a hearing for Burton's pending criminal case, Burton explained to Illinois Circuit Judge Clark Erickson that he was not receiving the medications that he had been prescribed before he was detained and that he was experiencing severe pain from sleeping on a thin mattress. The government made no objection to Burton's oral motion and no evidence or testimony was taken. At the end of the hearing, Judge Erickson ordered that the sheriff provide Burton with an extra mattress and furnish him with all medicines that were prescribed for him. But the JCDC did not provide Burton with an extra mattress, nor did it supply Burton with any prescriptions written by Dr. Zumwalt before Burton's detention, including Norco.

Burton saw Dr. Verghese again on November 24, 2009. At this time, Burton complained that he continued to suffer from severe hip pain and that he was developing pain in his elbow from the crutches. Dr. Verghese diagnosed Burton with tennis elbow and recommended physical therapy to help his recovery progress more quickly. Dr. Verghese stated in his deposition that he taught Burton some simple stretching exercises, but Burton contends that he was unable to understand the instructions.

Sometime after Burton's November 24 appointment, Nurse Gill called Dr. Verghese to inquire about his recommendation of physical therapy. Dr. Verghese informed her that Burton could do physical therapy exercises in his cell. Nurse Gill then gave Burton written instructions on how to complete physical therapy exercises with a towel and also provided a towel. The jail did not provide Burton with outside physical therapy. Burton continued to use crutches for the remainder of his detention.

Dr. Verghese saw Burton for the last time on February 25, 2010. Burton again complained about elbow and hip pain and admitted he had not been doing the stretches that Dr. Verghese and Nurse Gill had suggested. Dr. Verghese concluded that Burton should stretch his muscles surrounding his hip and elbow and recommended physical therapy, on the condition that Burton could convince the court that he should receive it.

During each appointment, Dr. Verghese examined Burton and determined that his avascular necrosis was improving. In fact, Dr. Verghese stated in his deposition that as of November 24, 2009, he found no evidence of any avascular necrosis at all. But Burton continued to complain about severe pain and to request narcotic pain medication, which Dr. Verghese refused to prescribe. Dr. Verghese also refused to prescribe or recommend a thicker mattress despite Burton's requests because he did not believe that a second or different mattress would affect Burton's underlying medical condition.

For these reasons, at a later hearing in Burton's criminal case, Illinois Circuit Judge Kathy Bradshaw denied Burton's request that the court order the sheriff and the jail to provide

him with narcotic medication, a second mattress, and a different orthopedist. Judge Bradshaw determined that Burton had no current prescriptions for the medication he was requesting and was being seen by a competent orthopedist, Dr. Verghese, who had not recommended an additional mattress or prescribed Norco.

A few months after Burton's February 25 appointment with Dr. Verghese, the JCDC offered to make Burton a follow-up appointment, but Burton refused to go. In his deposition, Burton explained that he did not think Dr. Verghese was helping him get better, and that Dr. Verghese was writing prescriptions for physical therapy that the jail was not going to fill, so he did not want to waste time with another appointment.

Between June and August of 2010, Menard contacted other orthopedists in the area to try to schedule an appointment for Burton, but his efforts were unsuccessful. In a January 24, 2011 healthcare review document, Menard and Nurse Gill noted that all orthopedic doctors in the area refused to see Burton. The review also noted that Burton had recently been caught hoarding and selling Xanax, Seroquel, and Ultram in jail.

Burton continued to complain about his hip and elbow pain and was seen by the JCDC medical staff several times. Burton also received medical treatment for other conditions, including a rash and rectal bleeding, while detained. Burton does not allege that he was ever denied an appointment with the medical staff, who saw him twenty-six times during his eighteen-month period of detention.

On May 3, 2011, Burton filed a complaint against the JCDC; Kankakee County Sheriff Timothy Bukowski, Chief of Corrections Michael Downey, and Assistant Chief of Corrections Chad Kolitwenzew (the "non-medical defendants"); and Menard, Physician's Assistant Tiniki White, Nurse Gill, and Nurse Charee Sangster (the "medical defendants"). Burton requested monetary relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights while he was detained. The district court denied defendants' motion to dismiss, finding that Burton had stated a claim that defendants were deliberately indifferent to his serious medical needs.[1]

After the close of discovery, defendants moved for summary judgment, arguing that no reasonable jury could find for Burton and that they were entitled to qualified immunity because their actions were consistent with clearly established law. On September 16, 2014, the district court denied defendants' motion for summary judgment.

Defendants moved for reconsideration of the district court's order on October 6, 2014, arguing that the non-medical defendants should be dismissed from the case. The district court denied the motion, reasoning that it could not determine the non-medical defendants' personal involvement in the creation and implementation of jail policies that were responsible for Burton's alleged constitutional deprivations. Defendants now appeal.

---

[1] Kankakee County was later added as a necessary party under *Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947 (7th Cir. 2003), but the County is not a party to this appeal.

**II. Discussion**

On appeal, defendants contend that the district court erred by denying their motion for summary judgment because, even after resolving all factual inferences in favor of Burton, no reasonable jury could conclude that they were deliberately indifferent to his serious medical needs. Defendants also claim that they were entitled to invoke the defense of qualified immunity, which shields government officials from liability "for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1022 (7th Cir. 2000). Like the district court, we combine our analysis of whether there is a genuine issue of material fact with respect to Burton's constitutional claim and whether defendants were entitled to qualified immunity, as the issues are inextricably linked in this case. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) ("The district court blended together its analysis of whether there was a genuine issue of material fact with respect to Walker's claim and whether the defendants were entitled to qualified immunity. Under certain circumstances, such as those presented here, the two inquiries effectively collapse into one.").

We review the denial of summary judgment de novo and resolve all factual disputes in the nonmovant's favor. *See Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014). But the existence of a factual dispute will not preclude summary judgment when the dispute does not involve a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

As an initial matter, we reject Burton's argument that the district court's decision denying qualified immunity for defendants was not an appealable final decision. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' … ."). Defendants' arguments do not turn on factual disputes— defendants argue that even after drawing all factual inferences in Burton's favor, it is evident that their conduct did not violate his constitutional rights. The case therefore turns on issues of law, which may be resolved in this appeal.

In determining whether a government official is entitled to qualified immunity, we make two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). Burton's constitutional rights as a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment, which prohibits deliberate indifference to his serious medical needs. *Pittman v. Cnty. of Madison*, 746 F.3d 766, 775 (7th Cir. 2014). This standard is essentially the same as the Eighth Amendment's prohibition against cruel and unusual punishment, which applies to

convicted prisoners. *See Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013).

To prove a claim for deliberate indifference, Burton must show that the alleged conditions were objectively serious enough to amount to a constitutional deprivation and that defendants possessed a sufficiently culpable state of mind. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). The subjective element "requires more than negligence and it approaches intentional wrongdoing. The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (internal citation omitted).

In denying defendants' motion for summary judgment, the district court found that disputed questions of material fact existed as to whether defendants were deliberately indifferent to Burton's serious medical needs. Specifically, the district court held that a reasonable jury could find that the following conduct violated Burton's constitutional rights: (1) stopping Burton's prescribed medication, including his pain medication, for over a week after he was detained; (2) refusing to contact Burton's primary care physician or prescribe narcotic pain medication, despite Burton's supposedly painful withdrawal symptoms; (3) refusing to provide Burton with a second mattress; and (4) refusing to provide Burton with physical therapy and failing to effectively treat Burton's rash and rectal bleeding. We address each of these issues in turn.

## A. Delay in Receiving Medication

When Burton checked into the JCDC, he had nine different prescription medications with him, including Norco.

Under JCDC policy, when an inmate is booked into jail, his medications are confiscated and must be approved by the jail medical department before they are dispensed. Burton contends, and the district court accepted, that after Burton's booking on September 23, 2009, he did not receive any medication until October 1, 2009. But Burton's own sworn statements conflict with this version of the facts. In his deposition, which took place months before Burton first raised this argument before the district court, Burton stated that he received Ultram after meeting with Menard on September 25, that Nurse Gill ordered his Ultram on September 25, and that he had informed Dr. Verghese that he was taking Ultram on September 29. These statements are consistent with JCDC medical records, which show that Ultram was dispensed on September 25, 2009.

We therefore reject Burton's belated attempt to claim that his medications were withheld for nine days. This claim is "blatantly contradicted" by his deposition testimony, and as such, the district court should not have accepted this version of the facts, even when ruling on a motion for summary judgment. *Scott*, 550 U.S. at 380.

In considering whether a two-day delay in receiving medication implicates the Constitution, we must keep in mind that "the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir. 1985), *abrogated on other grounds*; *see also Wilson v. Seiter*, 501 U.S. 294, 297 ("[O]nly the unnecessary *and wanton* infliction of pain implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege deliberate

indifference to his serious medical needs." (internal citation and quotation marks omitted)). "Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).

Here, Burton does not claim, or present any evidence that would support a claim, that defendants deliberately or even recklessly delayed the distribution of his pain medication. Although we recognize the importance of prompt medical aid for a patient's necessary medical treatment when he is detained or incarcerated, without evidence that defendants acted with the requisite bad intent in delaying the dispensation of his medication, Burton's allegations are insufficient to sustain a deliberate indifference claim. Put simply, a two-day delay is not enough, standing alone, to show a culpable mental state. The delay may or may not have been negligent, but it did not constitute deliberate indifference for purposes of the Due Process Clause of the Fourteenth Amendment.

## B. Failure to Contact Burton's Primary Care Physician or Prescribe Norco

Burton next contends that because the medical staff ignored his requests for narcotic pain medication and refused to contact his primary care physician who had previously prescribed Norco, he suffered extreme post-surgical pain and withdrawal symptoms. We agree with defendants that no reasonable jury could conclude that the failure to prescribe narcotic pain medication or contact a doctor who would prescribe it amounted to deliberate indifference. Surely Burton would have preferred Vicodin to Ultram, or to have seen a doctor who would have prescribed narcotics, but

detainees are not entitled to receive "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Moreover, we recognize that "[t]here is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Accordingly, to demonstrate that defendants acted with deliberate indifference, Burton must show that the medical defendants' refusal to prescribe Norco was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)).

Burton presented no such evidence; in fact, the record suggests that the decision to prescribe non-narcotic pain medication was a reasonable one. This was the course of treatment recommended by Dr. Verghese—Burton's own orthopedic surgeon—immediately after his surgery. The decision to prescribe non-narcotic pain medication was reaffirmed by Dr. Verghese several times after thorough examinations, and was supported by a reasonable medical explanation: synthetic opiates have less addictive potential than non-synthetic opiates such as Norco.

Although Dr. Zumwalt followed a different course of treatment in prescribing Norco, "[m]ere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference." *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). In other words, evidence that another doctor would have followed a different course of treatment is insufficient to sustain a deliberate indifference claim.

Burton also fails to present any objective evidence that his painful withdrawal symptoms created a serious medical need for Norco. Burton's after-the-fact description of his symptoms is not objective evidence of a serious medical need for narcotic drugs, especially given that two trained medical professionals concluded otherwise. Moreover, Burton's own primary care doctor testified that Burton had no medical need for Norco whatsoever. In his deposition, Dr. Zumwalt stated that Burton was not prescribed Norco for long enough to become addicted, and that withholding narcotic medication would not put Burton at risk of medical complications. *Cf. Wilson v. Hosey*, No. 09-C-7777, 2012 WL 957488, at *7 (N.D. Ill. Mar. 15, 2012) (granting summary judgment for defendant where plaintiff's only evidence that he needed medical treatment was his testimony, which was contradicted by testimony by plaintiff's doctor).

## C. Failure to Provide a Second Mattress

Defendants also dispute that a triable issue of fact exists as to whether the failure to give Burton a second mattress amounted to cruel and unusual punishment. The district court held that a reasonable jury could conclude that this conduct deprived Burton of "the minimal civilized measure of life's necessities." But the Supreme Court has clarified that conditions of confinement of this kind involve "deprivations of *essential* food, medical care, or sanitation." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (emphasis added). Burton presents no evidence to support his allegation that sleeping on a single mattress amounted to a deprivation of this magnitude. Instead, Burton's treating physician examined his condition and concluded that a second mattress was unnecessary because it would not affect his condition at all. Without

some evidence that defendants' conduct deprived Burton of essential medical care, no reasonable jury could conclude that Burton's conditions of confinement amounted to cruel and unusual punishment.[2]

### D. In-Cell Physical Therapy and Treatment for Burton's Rash and Rectal Bleeding

Finally, defendants contend that no reasonable jury could find that defendants were deliberately indifferent to Burton's serious need for physical therapy and treatment for his rash and rectal bleeding. We agree.

Dr. Verghese twice prescribed physical therapy for Burton's hip and tennis elbow. The JCDC medical staff did not ignore this advice; soon after Dr. Verghese issued his first prescription, Nurse Gill called him to discuss it. In this phone call, Dr. Verghese informed Nurse Gill that in-cell therapy would be sufficient, and that outside physical therapy was unnecessary. Accordingly, Nurse Gill provided Burton with instructions and a towel to perform in-cell exercises. Burton admits that he did not follow these instructions, supposedly because they were inadequate. When Dr. Verghese again prescribed physical therapy several months later, he did so on the condition that Burton convince the court to allow it, which suggests that it was not medically necessary.

---

[2] Although the district court issued an order in Burton's criminal case requesting that the sheriff provide Burton with a second mattress, defendants' failure to comply is insufficient in itself to sustain a deliberate indifference claim, which requires some evidence of a serious medical need. *See Wilson*, 501 U.S. at 298.

Even assuming that Burton had a serious medical need for outside physical therapy or more thorough instructions from the JCDC staff, Burton fails to present evidence that the medical defendants, who contacted Dr. Verghese and followed his recommendations for treatment, acted with the requisite state of mind for deliberate indifference. On these facts, it is difficult to even conclude that defendants were negligent. There is therefore no evidence from which a reasonable jury could conclude that defendants consciously disregarded Burton's serious medical need for physical therapy.

Likewise, we disagree that a reasonable jury could find that defendants' treatment of Burton's rash and rectal bleeding amounted to deliberate indifference. Burton does not contend that he was ever denied treatment for these conditions—instead, the record shows that the medical defendants promptly responded to Burton's complaints and prescribed medication. Burton does not present any evidence that defendants' course of treatment fell below prevailing medical standards, nor does he dispute that his conditions eventually resolved, which suggests that the chosen course of treatment was effective.

## III. Conclusion

Because no reasonable jury could find that defendants' conduct violated Burton's constitutional rights, the medical and non-medical defendants were entitled to invoke the defense of qualified immunity, and the district court's decision denying defendants' motion for summary judgment is REVERSED and the case REMANDED for entry of judgment for the defendants.