NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 18, 2016[*]
Decided March 18, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1137

| | |
|---|---|
| THOMAS J. RILEY, <br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 11-2196 |
| CHAD KOLITWENZEW, <br> *Defendant-Appellee*. | Colin S. Bruce, <br> *Judge*. |

### O R D E R

Thomas Riley, a federal prisoner, was detained in the custody of the Marshals Service during his criminal case. He was housed under contract at the Jerome Combs Detention Facility in Kankakee, Illinois, and while at that jail he developed a painful inguinal hernia. Riley eventually sued several employees, *see* 42 U.S.C. § 1983, claiming that his hernia was being ignored, but the district court declared the matter "resolved" and dismissed the action sua sponte after learning that Riley had received successful

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

surgery. We vacated that decision, but only as to one of the named defendants, Chad Kolitwenzew. It was clear that the other defendants were not personally involved in Riley's medical care, but Riley had plausibly alleged that Kolitwenzew, the assistant chief of corrections at the jail, knew about his situation but "did nothing to hasten surgery or minimize his pain." *Riley v. Kolitwenzew*, 526 F. App'x 653, 657 (7th Cir. 2013). On remand the district court granted summary judgment for Kolitwenzew, reasoning that a jury could not find from the evidence that he ignored Riley's medical needs. We agree with that view of the evidence and affirm the judgment.

We construe the evidence in favor of Riley, the opponent of summary judgment. *See Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). Riley awoke with severe abdominal pain on March 12, 2011. A staff member promised that medical personnel soon would evaluate him, but after waiting in vain for more than a day, Riley submitted a grievance addressed to "Chief Chad." Kolitwenzew, as assistant chief of corrections, oversaw daily operations at the jail, including supervising employees and handling inmate grievances. Two days after submitting his grievance, Riley went to the infirmary for a routine blood draw. By then his pain had subsided, and he did not mention his previous discomfort to the nurse.

A week later the abdominal pain recurred. At a medical appointment on March 21, Riley told physician's assistant Tiniki White that he was experiencing intermittent pain in his lower left abdomen extending into his left testicle. White ordered an ultrasound to check for an inguinal hernia and prescribed tramadol, an opioid pain reliever. Three days later Riley submitted a grievance addressed to "Medical," explaining that his prescribed medication still had not been dispensed. The medication finally was made available after another four days, and on March 30 the ultrasound was performed and showed a small cyst in his left testicle.

Riley saw White again for a follow-up appointment in mid-April. He said he was regularly taking the pain medication, which provided some relief. White referred him to a urologist, but Riley, as a federal prisoner, needed approval from the Marshals Service for the outside appointment.

On April 20, Riley directed a second grievance to assistant chief Kolitwenzew. Riley asserted that his tramadol had been cancelled, despite worsening pain. Kolitwenzew contacted the medical department that same day and was briefed about Riley's testicle cyst and pending referral to the urologist. He also was told that Riley's pain medication had not been cancelled. Kolitwenzew relayed this information to Riley

and told him that physician's assistant White would visit him to discuss the grievance. White contacted Riley the next day. Riley said the pain was affecting his left leg, and that for "a week or so" he had not received his tramadol, which offered "some relief." White ordered a refill, and a day later Riley's medication was resumed.

On May 3, 2011, the urologist examined Riley and diagnosed a left inguinal hernia. He referred Riley to a surgeon, and a month later, after the Marshals Service had given its approval, Riley consulted that specialist. The surgeon confirmed the hernia diagnosis but characterized surgery as optional since, he thought, surgery might not relieve Riley's symptoms. Still, the medical staff sought authorization from the Marshals Service to arrange for surgery. Riley was still waiting for an answer when, nearly two months later, he sent Kolitwenzew a request for medical care emphasizing his desire for surgery because he did not like taking the tramadol.

Two days after submitting that request, on August 2, Riley had another follow-up with physician's assistant White. He was developing numbness around his left testicle, Riley said, and because of the pain was having "problems" with his left leg. White explained that the Marshals Service had not yet authorized surgery. White refilled the tramadol prescription and sent the Marshals Service a second request to authorize surgery. On August 11, Riley sent Kolitwenzew another request for medical care seeking confirmation of White's assertion that approval from the Marshals Service was needed for his hernia surgery. Kolitwenzew contacted the medical department and was told that a request for surgery was pending, that Riley's condition was not an emergency, that he was receiving medical care from White, and that he was getting pain medication. Kolitwenzew responded to Riley the next day, confirming that the Marshals Service, not jail administrators, had to authorize hernia surgery. That authorization came on September 21, and Riley had surgery on October 14.

During this period—March through October 2011—Riley had directed 6 additional grievances and 11 other requests for medical care to Kolitwenzew, all complaining about not having pain medication. (Riley also submitted many requests for care to the medical department, but there is no evidence that they were sent to Kolitwenzew or that he knew about them.) Riley's medication was held at the dispensary and doled out one pill at a time, though it was still his responsibility to monitor the supply and notify the nursing staff when it was getting low. Riley is critical of this system, but almost always when he complained about running out, his pain medication was resupplied the same day or the next; only twice did he wait two days.

Other than lapses immediately preceding his requests for refills, Riley received pain medication nearly every day, often multiple times per day.

In an affidavit Kolitwenzew denied seeing any grievances about Riley's hernia, other than those from April 20 and August 11, which he answered personally. Kolitwenzew explained that, under the procedure at that time, grievances first went to supervising officers who forwarded them to Kolitwenzew only when they were unable to respond adequately. Kolitwenzew passed along to the medical department any grievance about healthcare, and sometimes he contacted the department to discuss the issue. Kolitwenzew added that, although he had "some authority regarding how the medical department is run," he had "no authority" over medical decisions.

On appeal Riley argues that a jury could find from the evidence that Kolitwenzew ignored "continuous grievances" about his pain, the medication lapses, and his need for hernia surgery. Riley was a pretrial detainee, but we evaluate this claimed denial of due process using the same deliberate-indifference standard governing Eighth Amendment claims from convicted prisoners. *See Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012). We note that Riley never amended his June 2011 complaint to include events after it was filed, but the parties litigated the entire course of Riley's hernia treatment through early January 2012. Thus, we, too, will consider all of Riley's treatment. *See Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 878–79 (7th Cir. 2005).

Kolitwenzew doesn't dispute that Riley's hernia and related pain were objectively serious medical conditions, *see Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011), so the only issue is whether a jury reasonably could find that Kolitwenzew was deliberately indifferent to those impairments, *see Johnson v. Doughty*, 433 F.3d 1001, 1009–10 (7th Cir. 2006). Establishing this subjective element requires proof that a defendant knew about, but consciously disregarded, a serious risk of harm. *See Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Prison employees who, like Kolitwenzew, don't provide medical care are shielded from liability if they "responded reasonably" to complaints, e.g., by investigating and relying on the medical staff's assessment that adequate treatment is being provided. *See Johnson*, 433 F.3d at 1010–11; *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005).

As to Riley's hernia there is no evidence that Kolitwenzew knew of a risk from the delay in receiving surgery. None of Riley's complaints related to the delay, and, in fact, the surgeon deemed surgery to be optional. As to Riley's pain, the parties disagree about whether Kolitwenzew knew about Riley's many grievances and medical requests.

Kolitwenzew maintains that he saw only two grievances. Riley counters that, given the sheer number of his complaints, Kolitwenzew must have known about his continuing pain. But this dispute is not material—even assuming that Kolitwenzew saw all of Riley's grievances and medical requests, those submissions asked for more pain medication, which Riley promptly received. *See Burton*, 805 F.3d at 785. There is no evidence that Kolitwenzew—or anyone else—deliberately disregarded these problems.

Kolitwenzew personally investigated and responded to two of Riley's grievances. After receiving Riley's April 20 grievance complaining that his pain was worse and his medication had been cancelled, Kolitwenzew promptly contacted the medical department, received assurances that Riley was being treated and his medication had not been cancelled, relayed the information to Riley, and arranged for physician's assistant White to visit Riley to discuss the grievance. And after Riley filed a medical request on August 11 asking about the need for approval from the Marshals Service for his surgery, Kolitwenzew again promptly contacted the medical department and received confirmation that a request had been sent to the Marshals Service and that Riley was receiving treatment and medication. No jury could find that Kolitwenzew's response to Riley's complaints and his reliance on the medical staff's advice constituted deliberate indifference.

Riley also argues that the jail's policy for dispensing medication is "designed to create enormous gaps" in treatment. Because prisoners receive individual doses from the dispensary, Riley asserts, they are unable to know when their medication is running low and thus cannot timely notify nursing staff when a refill is needed. But Riley presented no evidence that Kolitwenzew was involved in this process or that he knew about Riley's dissatisfaction with it.

**AFFIRMED**.