**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 18, 2016[*]
Decided August 18, 2016

**Before**

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-3244

| | |
|---|---|
| KELVIN MERRITT, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 13-3377 |
| THOMAS BAKER and WEXFORD HEALTH SOURCES, INC., *Defendants-Appellees*. | Colin S. Bruce, *Judge*. |

**O R D E R**

Kelvin Merritt, an Illinois inmate, appeals the grant of summary judgment against him in this suit under 42 U.S.C. § 1983 asserting that a prison doctor, Thomas Baker, was deliberately indifferent to his rib injury and that Wexford Health Sources, Inc., which contracts with the Illinois Department of Corrections to provide medical care for inmates, had a policy of delaying medical treatment in an effort to save money. We affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

The treatment of which Merritt complains occurred shortly after he was transferred to the Western Illinois Correctional Center. Within days of his arrival, he told a nurse that he was having pain on the left side of his rib cage (pain that he estimated as five out of ten in terms of severity). He said that he sustained a rib injury after being slammed to the ground during a fight a couple weeks earlier at his former institution, the Lawrence Correctional Center. The nurse examined Merritt and noted a "palpable lump" on the "left rib area." She prescribed Tylenol and referred Merritt to a doctor.

Five days later, Merritt was examined by Dr. Baker, the medical director. Merritt explained that, even with the Tylenol, he was still in pain, and he requested a lower-bunk permit. Dr. Baker noted the lump on Merritt's ribcage and ordered an x-ray. Dr. Baker did not issue Merritt a lower bunk pass, concluding that there was "no medical indication" that he needed one, and continued his Tylenol prescription.

The next day, Merritt received an x-ray of his rib cage. The films were interpreted by an outside physician who saw "no convincing evidence of a left rib fracture" and concluded that the other tissues and structures in Merritt's chest appeared normal.

A week later, Merritt followed up with Dr. Baker. Dr. Baker examined him and described the lump on his ribs as three centimeters in diameter and non-tender, not fluctuant, and with no signs of infection. Dr. Baker explained to Merritt that his x-rays were normal and turned down Merritt's request that he be allowed to see an outside specialist because there was no medical reason for further treatment.

According to Merritt's medical records, he did not complain again of rib pain to Dr. Baker or any other medical personnel at Western Correctional before being transferred a half year later, to Pickneyville Correctional Center.

Merritt sued Dr. Baker, primarily alleging that the doctor had been deliberately indifferent when he failed to issue him a lower-bunk pass or prescribe stronger pain medication for his rib pain. Merritt says that Dr. Baker's decisions needlessly prolonged his pain. Merritt also sued Wexford, alleging that it had a policy of delaying or denying treatment for inmates with broken bones in order to avoid paying expensive medical bills for prompt treatment.

Discovery ensued and, after further proceedings, the district court granted the defendants' motion for summary judgment. The court concluded that there was no evidence that Dr. Baker had been deliberately indifferent to Merritt's complaints of pain. Upon examining Merritt, Dr. Baker promptly ordered x-rays, conducted a follow-up

exam to rule out infection or possibility of fracture, and prescribed Tylenol to manage any pain. And to the extent that Merritt disagreed with the doctor over the course of treatment, the court explained that this alone did not violate any constitutional right. As for Wexford, the court determined that Merritt provided no evidence that it had a policy or custom that violated the Constitution.

On appeal Merritt challenges generally the grant of summary judgment in favor of the defendants. But as the district court explained, Merritt's only evidence—his own assertions that he did not receive adequate care and disagreed with the course of treatment prescribed by Dr. Baker—is nothing more than an unwillingness to accept the professional judgment of his treating physician and not a basis for establishing deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Johnson v. Doughty*, 433 F.3d 1001, 1012–13. And no reasonable juror could conclude that Dr. Baker's actions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [he] . . . did not base the decision[s] on such a judgment." *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)). As soon as Dr. Baker was made aware of Merritt's complaint, he promptly ordered x-rays to establish whether Merritt's ribs required further treatment. Finding no underlying abnormality or evidence of a rib fracture, Dr. Baker concluded that Tylenol was sufficient to treat Merritt's pain and that a lower-bunk pass was unnecessary. Despite Merritt's assertion that Dr. Baker's treatment decisions left him in severe pain, he never once complained of continuing rib pain after Dr. Baker treated him.

Merritt also raises a challenge relating to discovery. After the defendants had moved for summary judgment, he complained to the district court that Wexford had failed to turn over requested medical records that, he says, would establish that it had a practice of delaying treatment in order to save costs. Later he moved to compel Wexford to produce documents he had requested during discovery. The court never ruled on his motion, however, and Merritt now argues that this was error. But we need not decide whether the court wrongly disregarded the motion because a claim under *Monnell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978)—that Wexford had a policy of delaying inmate care—cannot be supported if, as here, no constitutional violation occurred in the first place. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Petty v. City of Chicago*, 754 F.3d 416, 424–25 (7th Cir. 2014); *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010); *Houskins v. Sheahan*, 549 F.3d 480, 493–94 (7th Cir. 2008).

AFFIRMED.